[No. 19277.    In Bank.—September 13, 1894.]

## VICTOR MONTGOMERY, Respondent, *v.* SANTA ANA WESTMINSTER RAILWAY COMPANY, Appellant.

Streets—Railway Franchise—Ejectment by Abutting Owner.—The owner in fee of land abutting upon a public street in an incorporated town cannot maintain an action of ejectment against a railway company which has constructed and is using a railroad track upon and over the public street, upon the side or half thereof adjoining the land of such abutting owner, under and by virtue of an ordinance of the town trustees empowering it to do so.

Id.—Urban Servitudes—Railway Tracks—Compensation to Owner—Municipal Authority.—Urban servitudes are essential to the enjoyment of streets in cities, and include the authority to use the street for the track of a railway company under license by the city authority, without previous compensation to the owner of the fee whether for a street railway, or for an ordinary railway for the transportation of freight and passengers.

Id.—Use of Street for Railway Purposes—Servitude—Special Damages.—The use of a public street in a city for general railway purposes imposes no new burden or servitude upon the owner of the abutting land; and the object of the user being within the conceded rights of the public, the methods of its accomplishment are subject to legislative control, and subject also to an action for damages by any abutting owner (whether or not he may be vested with the fee to the center of the street) whose right of ingress and egress, or right to light and air, shall be interfered with.

Id.—Possession of Public Street—Ejectment.—The municipal authorities as trustees of the public are in possession of the public streets, and hold them for the use of the public as effectually as they do or may the public buildings of the municipality, and ejectment will not lie for the recovery by an abutting owner of the possession of any part of the street from a railway company having a right of possession under the municipal authorities.

APPEAL from a judgment of the Superior Court of Orange County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*James G. Scarborough,* for Appellant.

*Victor Montgomery,* for Respondent.

The COURT.—This is an action of ejectment to recover possession of a strip of land in the city of Santa Ana, county of Orange.

Plaintiff had judgment, from which, and from an order denying a motion for a new trial, defendant appeals.

Defendant by its answer set up two separate defenses. In the second of these it set out:

1. That it is a corporation with power to construct and operate a steam railroad for the transportation of freight and passengers from the city of Santa Ana to Westminster, across, along, and upon any street, avenue, or highway.

2. That a strip of land thirty feet in width off the entire north side of the land described in the complaint was and is a public street or highway in said city of Santa Ana, under the control of, and in the possession of, the board of trustees of said city.

3. That said board of trustees by ordinance authorized and licensed defendant to construct and operate a railroad through and over said street, for carrying freight and passengers in cars to be propelled by dummy or motor engines.

4. That it constructed its road on said street and operated it as provided in said ordinance.

5. That it has not excluded defendant or others from the street, and has only used it for the purpose aforesaid and in common with the public, and has not impaired said street or curtailed the use thereof by others, etc.

To this defense plaintiff demurred upon the ground that it did not state facts sufficient to constitute a defense.

The demurrer was sustained by the court, and defendant declined to amend as to this defense, and the action of the court in sustaining the demurrer is urged as error.

The whole proposition involved in this case may be put thus: Can the owner in fee of land abutting upon

a public street in an incorporated town maintain an action of ejectment against a railroad company organized and existing for the transportation of freight and passengers from said town to a neighboring town, which company, under and by virtue of an ordinance of the trustees of the first designated town empowering it to do so, has constructed and is using a railway track upon and over said public street, and upon the side or half thereof adjoining the land of such abutting owner?

The question is stated thus for the reason that while the evidence in the case, consisting of the deed to respondent and the city map together, show that his land abutted upon the street in question, viz., Second street in the city of Santa Ana, yet by section 1112 of the Civil Code, " a transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway to the center thereof, unless a different intent appears from the grant." There is nothing in the evidence to indicate the contrary, and hence we must presume respondent owns to the center of the highway or street, subject only to the right of the public to an easement or right of way for street purposes therein and thereto.

All streets are highways, but not all highways are streets. (*Common Council* v. *Croas,* 7 Ind. 9; *Lafayette* v. *Jenners,* 10 Ind. 74; *Clark* v. *Commonwealth,* 14 Bush, 166.)

In other words, there is a wide distinction between a highway in the country and a street in a city or village, as to the mode and extent of the enjoyment, and as a sequence in the extent of the servitude in the land upon which they are located.

The country highway is needed only for the purpose of passing and repassing, and as a general rule, to which there are a few needed exceptions, the right of the public and of the authorities in charge is confined to the use of the surface, with such rights incidental thereto as are essential to such use.

In the case of streets in a city there are other and further uses, such as the construction of sewers and drains, laying of gas and water pipes, erection of telegraph and telephone wires, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times urban streets have been subjected.

These urban servitudes are essential to the enjoyment of streets in cities and to the comfort of citizens in their more densely populated limits.   It has sometimes been suggested that a distinction is to be made between cases in which streets are laid out and opened upon property belonging to the corporation and those in which streets become such by dedication, or by condemnation proceedings under the right of eminent domain upon compensation being made, but the consensus of modern opinion seems to be that no such distinction properly exists, and that " whether the corporation be the owner of the fee of the streets in trust for the public, or whether it be merely the trustees of the streets and highways as such, irrespective of any title to the soil, it has the power to authorize their appropriation to all such uses as are conducive to the public good, and do not interfere with their complete and unrestricted use as highways."   (*People* v. *Kerr*, 27 N. Y. 202; *Cincinnati* v. *White*, 6 Pet. 432; Thompson on Highways, 7; Elliott on Roads and Streets, 305.)

It is said by Elliott in his work on Roads and Streets, at page 299, that " it is doubtful whether of all servitudes there is one so broad and comprehensive as that of a city in its streets."

It authorizes the use of the street for the track of a street-car company under license by the city authority without compensation to the owner of the fee.   (*Finch* v. *Riverside etc. R. R. Co.*, 87 Cal. 598.)

A *street railway* has been defined as " a railway laid down upon roads or streets for the purpose of carrying passengers."   (Elliott on Roads and Streets 557.)

It is further said by the same author that "the distinctive and essential feature of a street railway, considered in relation to other railroads, is that it is a railway for the transportation of passengers and not of freight." It is said to exclude the idea of the carriage of freight, and that a railroad over which heavily laden freight trains are drawn cannot be considered a street railway.

Street-cars are little more than carriages for transportation of passengers, propelled over fixed tracks to which their wheels are adapted, and as a convenient, comfortable, and economical mode of conveyance, their use has become well nigh universal in cities, and as they add when properly constructed little or nothing to the burdens of the servient tenement, their use is upheld without the necessity of compensation to the abutting owner.

The use of a public street, however, for an ordinary railway for the transportation of freight and passengers, it has been said by the highest authority, imposes a new burden upon the street not contemplated in its dedication, and therefore the user cannot be indulged without compensation to the abutting owner of property upon such public street.

We are at a loss for any good reason for this distinction, or to see why the transportation of freight by modern and improved methods is not equally entitled to encouragement with the transportation of passengers. The essential wants of the citizen demand the former equally with the latter.

If there is any difference in the burden imposed upon the street it is in degree and not in kind. The great highways of England were constructed, not so much for the convenience of passengers as for the transportation of freight. In the infancy of commerce, when trade and traffic by land was insignificant in volume, when the sumpter horse, which answered to our modern pack-mule, answered all the purposes of transportation for goods, footpaths, bridlepaths, and lanes, served

all needed purposes; but, with the growth of inland commerce and the need of greater facilities for the interchange of commodities, the use of wheeled vehicles, and, as a means thereto, the highway as we know it, became a necessity. The Appian Way, commenced 312 B. C., which has provoked the admiration of the world, was entitled to commendation for its roadway sixteen feet in width, constructed for the transportation of burdens, while the paths of eight feet on each side of it for foot passengers, and upon which the Roman legions were wont to march, were unpaved.

In the construction of modern highways, urban and suburban, the great difficulty and the prominent object has been to build and adapt them by grade, width, and structure of roadbed to the carriage of freight.

Yet we are told in effect that, so far as modern methods are concerned, so far as ease, speed, and economy are involved, improvements are to be limited to the transportation of passengers; that cars with wheels adjusted to move upon fixed tracks, when applied to the transportation of passengers, are within the contemplated objects in view in opening the road or street, and therefore add nothing material to the burden of the servitude of the abutting landowner, while a precisely similar structure adapted to the transportation of freight adds an additional burden of a different character to the servitude, and cannot be tolerated without compensation to the abutting owner.

An interminable string of heavy drays may thunder through the street from early morning until set of sun, a menace to all who frequent the thoroughfare and an inconvenience to all dwellers thereon; but the cars of a railway, which move usually but a few times a day, and with infinitely less annoyance to the public, upon tracks so adjusted to the surface as to occasion little or no inconvenience, cannot be tolerated.

We fail to appreciate the philosophy of the distinction. On the contrary, we affirm that when a public street in a city is dedicated to the general use of the

public, it involves its use subject to municipal control and limitations for all the uses and purposes of the public as a street, including such methods for the transportation of passengers and freight as modern science and improvements may have rendered necessary, and that the application of these methods, and indeed of those yet to be discovered, must have been contemplated when the street was opened and the right of way obtained, whether by dedication, purchase, or condemnation proceedings, and hence that such a user imposes no new burden or servitude upon the owner of the abutting land. The object of the user being within the conceded rights of the public, the methods of its accomplishment are subject to legislative control; and subject, also, to an action for damages by any abutting owner, whether or not he may be vested with, the fee to the center of the street, whose right of ingress and egress or his right to light and air shall be interfered with.

The thirteenth subdivision of section 862 of the municipal government act of this state authorizes the boards of trustees of municipalities of the sixth class (of which Santa Ana is one) "to permit, under such restrictions as they may deem proper, the laying of railroad tracks and the running of cars drawn by horses, steam, or other power thereon . . . . in the public streets." The world moves. Legislation in recent times has kept pace with the progress of the age.

The trend of judicial opinion, except where overshadowed and incrusted with *stare decisis*, is to a broader and more comprehensive view of the rights of the public in and to the streets and highways of city and country; and, while carefully conserving the rights of individuals to their property, the courts have not hesitated to declare the shadowy title which the owner of the fee holds to the land in a public street or highway, during the duration of the easement of the public therein, as being subject to all the varied wants of the public and essential to its health, enjoyment, and progress.

In *Paquet* v. *Mt. Tabor Street Ry. Co.*, 18 Or. 233, which was an action to enjoin a steam-motor railway company from constructing and operating its road upon a street in the city of Portland and upon a county road outside the city, abutting upon both of which the plaintiff owned land with the fee in him vested to the center of the street and road, and where no compensation had been made to plaintiff, the court in its opinion, by Thayer, C. J., in deciding the cause against plaintiff, said:

"The establishment of a public highway practically divests the owner of a fee to the land upon which it is laid out of the entire present beneficial interest of a private nature which he has therein. It leaves him nothing but the possibility of a reinvestment of his former interest in case the highway should be discontinued as such. This view, I am aware, is contrary to the ancient doctrine that the owner of the fee owned the land subject only to such public uses, and that he had a right of action when the use was diverted to a different purpose. Such a doctrine may have been applicable where the ownership was merely subject to a right of way over the land; but where, as in modern cases, it is devoted exclusively to the purposes of a public thoroughfare, and the control thereof is committed to legally constituted authorities charged with the duty of maintaining it for such purpose, the doctrine becomes a vague theory, and should be laid away among the antiquities of the past age."

*McQuaid* v. *Portland etc. Ry. Co.*, 18 Or. 237, enunciates a like doctrine.

In *Gaus & Sons Mfg. Co.* v. *St. Louis etc. R. R. Co.*, 113 Mo. 308, 35 Am. St. Rep. 706, the supreme court of Missouri held in substance that the construction and operation of an ordinary steam railroad at grade in a public street under municipal authority is not a new public use of the street, for which compensation may be demanded by abutting owners as in the case of prop-

CIV. CAL.—13

erty "taken or damaged" within the meaning of the constitution. The court said:

"When land is dedicated generally, and without restrictions, or condemned, for a public street in a town or city, the owner of the abutting lots, who secures the benefit of the street, and persons also who purchase and improve property thereon, hold their property rights subject to all the uses to which the street can be lawfully subjected by the public. New uses in the improvement in the mode of travel and transportation are constantly arising. When there is no restriction on the public use new modes of use may be adopted which are consistent with the proper use of the street, without the consent of abutting owners, though such new uses may interfere somewhat with their own convenient use of the street. . . . . For any damages that may be caused by an unlawful or negligent maintenance of the track in the street, or by negligent use of engines, or movement of trains, defendant will be liable in an action for damages."

This decision is in line with the decisions in that state. In Iowa a like doctrine prevails. In *Barney* v. *Keokuk*, 94 U. S. 324, which was ejectment in the United States court for the district of Iowa, to recover certain premises within a public street in Keokuk occupied with railroad tracks, buildings, sheds, etc., upon error to the supreme court of the United States, that tribunal held that although no permanent obstruction, like a depot building, could be erected on the streets of a town, yet it is held in that state (Iowa) that they may by public authority be occupied by railway tracks without the consent of the adjacent proprietors and without compensation, whether the fee of the streets (as in that case) be in him or in a third person. The court further held that there was no substantial difference between streets in which the legal title is in private individuals, and those in which it is in the public, as to the rights of the public therein. (*Kucheman* v. *C. C. & D. Ry. Co.*, 46 Iowa, 366.)

In New Jersey it is held: 1. That the legislature has power to authorize the use of a public highway for the purpose of a railway; 2. That the legislature must be the judges as to the benefit to the public, and to their authority the public and individuals must submit; 3. The authority to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, is not such a taking of private property for public purposes as requires compensation to the owner of the fee of the adjacent lands, as is contemplated by their constitution; 4. That the easement of the highway is in the public, although the fee is practically in the adjacent owner. "It is the easement only which is appropriated, and no right or title of the owner is interfered with." (*Morris etc. R. R. Co.* v. *Mayor etc. of Newark,* 10 N. J. Eq. 352.)

In *Spencer* v. *Point Pleasant etc. R. R. Co.*, 23 W. Va. 406, which was a bill in equity to restrain defendant from constructing and operating an ordinary steam railroad over a public street, the fee of which was in plaintiff, under a license from the municipal authorities, the court used the following language:

"Admitting she (the plaintiff) owns the fee to the middle of Seventh street opposite her lot, as she contends is the fact, she still owns the same, and neither her title or possession is in any manner disturbed by the railroad company. It has always been subject to the easement of the public to pass and repass over it and to use it as a street, and, subject to this easement, she has as much the enjoyment and possession of the whole of Seventh street as she ever had. What the railroad company has taken it has taken from the town council of Point Pleasant, a mere easement, and it has taken nothing from the plaintiff, and, therefore, under West Virginia authorities referred to, she is entitled to no injunction."

In *Edwardsville R. R. Co.* v. *Sawyer*, 92 Ill. 377, the supreme court of Illinois held that the public authorities who have the superintendence and control of the

public roads may authorize travel on them by the means of a railroad, and where a railroad company has constructed its road upon and along a public road, such use and possession is a matter between the road authorities and the railroad company, and the right cannot be questioned in an action of ejectment by the owner of the land over which the public road has been established.

This being an action of ejectment to recover a specific piece or parcel of land, and it appearing from the stipulation of the parties that the alleged ouster consisted only in the entry by the defendant upon a public street and the construction of a railroad track thereon, no question of damage to property other than to such public street, within the purview of section 14 of article I of the constitution of this state, can arise.

We may admit that the views herein expressed are in conflict with the doctrine enunciated in *Southern Pacific R. R. Co.* v. *Reed,* 41 Cal. 256, and *Muller* v. *Southern Pacific Br. Ry. Co.,* 83 Cal. 240, and it does not necessarily follow that ejectment will lie if the facts set out in the answer are true.

The cases above quoted were to recover damages. The cases of *Weyl* v. *Sonoma Valley R. R. Co.,* 69 Cal. 203, and *Finch* v. *Riverside etc. Ry. Co.,* 87 Cal. 597, in which ejectments were upheld, were cases in which the defendants were mere intruders upon the public street without valid license from any authorized body.

The rule as defined in *Mahon* v. *San Rafael T. Co.,* 49 Cal. 270, is regarded as the true one in cases of ejectment for injuries like the one complained of here. It was said in that case: " The exclusion of the plaintiff from entering on the land, except on the payment of a toll, and then only for the purpose of passing over the same, was a *disseisin.*"

In the present case the answer to which the demurrer was sustained averred: " That this defendant has not excluded the plaintiff or any one else from said street or any part thereof, nor does it claim to hold said street

or any part thereof exclusively from the plaintiff, or any one else whomsoever; but this defendant only claims the right to use the portion of said street actually occupied by said track in common with the public, under and by virtue of said ordinances of the said board of trustees of said city, and not otherwise."

The action of ejectment is a possessory action in which the plaintiff must show himself entitled to the present possession, and that he has been deprived thereof. Any thing which deprives a plaintiff of his present right of possession will deprive him of the remedy of ejectment.

The case of *Redfield* v. *Utica etc. R. R. Co.*, 25 Barb. 54, is on all fours with the present case, and the court there held that the claim of an easement was not a claim of title, and that the mere user of such easement by license of the public, without excluding others from a like user, did not amount to an ouster for which ejectment would lie; intimating, but without deciding, that trespass was in such a case the proper remedy. *Edwardsville R. R. Co.* v. *Sawyer*, 92 Ill. 377, is to like effect.

The municipal authorities as trustees of the public are in possession of the public streets, and hold them for the uses of the public as effectually as they do or may the public buildings of the municipality.

A writ of restitution which should put the plaintiff in possession of the street except as one of the public would constitute him guilty as a trespasser, or of a nuisance, or of erecting a perpresture, as the facts might determine. It has been said that a writ which authorized A to be placed in possession of real property, subject to the possession of B, is an absurdity.

Where A enters upon a public street and constructs a railroad without authority from the municipal authorities ejectment will lie, as was held in *Weyl* v. *Sonoma Valley R. R. Co.*, 69 Cal. 202, and in *Finch* v. *Riverside etc. Ry. Co.*, 87 Cal. 597. This rule proceeds upon the theory that as defendant does not justify under one having a right to possession, it matters not as to him

that another than the plaintiff may have a better right than either of the parties to the action.

A reversioner may maintain an action for an injury to his reversionary right, but cannot recover possession until the limited estate lapses.

So the holder of the title to a public street, the possession of which is held for the public, may maintain an action for damages to his property therein, but as against one who has taken no possession thereof, and is only in the exercise of an easement therein which is conferred by the municipal authorities in pursuance of their power, and which is valid as to the public, and which will expire with the easement of the public of which it is a part, should not be permitted to maintain ejectment for a violation of his property rights, if any, but should be remitted to an injunction to restrain, or if the injury is consummated, to an action for damages or to proceedings to abate as a nuisance, as the case may be.

It follows that the court below erred in sustaining the demurrer to the answer of the defendant.

The judgment is reversed and the court below directed to overrule the demurrer to defendant's second defense set out in his answer.

Neither Chief Justice BEATTY nor Justice DE HAVEN participated in the foregoing decision.