[Civ. No. 6086. First Appellate District, Division Two.—July 28, 1928.]

AGOSTINO CRAVIOTTO, Appellant, v. ALL PERSONS, etc., Defendants; EMMA ROSE, Respondent.

Henry E. Monroe and John J. Mazza for Appellant.

Garret W. McEnerney for Respondent.

PRESTON (H. L.), P. J., *pro tem.*—Plaintiff, Agostino Craviotto, brought this action under the provisions of the "McEnerney Act" [Stats. 1906 (Ex. Sess.), p. 78], to establish his title to two parcels of land situate along the waterfront in the city and county of San Francisco. Defendant, Emma Rose, answered, alleging that she was the owner in fee simple of the reversionary interest in one of the lots described in plaintiff's complaint, and that as to this lot the plaintiff was only the owner of a leasehold interest therein, which will expire in the year 1950.

The case was tried by the court and judgment was entered in favor of defendant, Emma Rose, quieting her title in accordance with the allegations of her answer. From this judgment plaintiff, Agostino Craviotto, prosecutes this appeal.

The record before us discloses these facts:

The land in controversy was originally tide-land, and owned by the state of California by virtue of its sovereignty, and was conveyed in separate interests. On March 26, 1851, the legislature of California passed an act granting to the city of San Francisco the "use and occupation of the tide-lands of San Francisco for a term of 99 years" from the date of said act. (Stats. 1851, p. 307, Laws 1850–53, p. 764.) The interest thus conveyed to the city of San Fran-

cisco is known, and will be hereafter referred to, as the "City Title." The "City Title" will expire by its own limitations on March 25, 1950. In May, 1851, scarcely more than a month after the enactment of the act just mentioned, the legislature passed another act, entitled, "An Act to Authorize the Funding of the Floating Debt of the City of San Francisco and to Provide for the Payment of the Same." (Stats. 1851, p. 387.) The latter act appointed five persons as "Commissioners of the Funded Debt of San Francisco," and gave them power, among other things, to lease or sell the property of the city which might be conveyed to them for that purpose. Section 12 of the act required that a commission theretofore created by an ordinance of the common council of San Francisco for the purpose of liquidating the debts of the city and known as "Commissioners of the Sinking Fund," should convey to the "Commissioners of the Funded Debt of San Francisco," created by the statute, all the property and all the right, title, and interest in property belonging to the city. Pursuant to this provision of the statute, the "Commissioners of the Sinking Fund," by deed dated May 24, 1851, conveyed to the "Commissioners of the Funded Debt," appointed by the statute of May 1, 1851, all the interest of San Francisco in the tide-lands, including the parcel in controversy in the case at bar. The effect of said deed was to *divest* the city of San Francisco of the "City Title" to the land in dispute in this action, which was the only interest that the city had therein, and to vest the same in the said "Commissioners of the Funded Debt." (*Board of Education* v. *Fowler,* 19 Cal. 22; *Friedman* v. *Nelson,* 53 Cal. 596; *Le Roy* v. *Dunkerly,* 54 Cal. 458.)

By deed dated September 20, 1852, the said "Commissioners of the Funded Debt," the owners of the "City Title," conveyed to one Charles D. Carter "all their right, title and interest" in and to the said land in controversy, and other lands. By deed dated June 25, 1853, the said Charles D. Carter conveyed to John R. Carroll an undivided one-half interest in the same land. By deed dated August 10, 1853, the said Charles D. Carter and John R. Carroll, conveyed to John R. Snyder all their right, title, and interest in and to said lands.

It is conceded by all parties to this action that the plaintiff, Agostino Craviotto, has succeeded to and acquired all the interest of John R. Snyder in the lands in question, which is known as the "City Title."

By an act of the legislature, approved May 18, 1853 (Laws 1850–53, p. 767), provision was made for the appointment of five persons, styled the "Board of California Land Commissioners," as commissioners to dispose of the remaining interest of the State of California in and to said tide-lands, which interest will be hereafter referred to as the "State Title," and which consisted of the reversion in fee after the expiration of the 99-year interest embraced within the "City Title." By deed, dated November 21, 1854, said "Board of California Land Commissioners," being then vested with the "State Title," conveyed the same to Stephen B. Whipple. It is stipulated that Stephen B. Whipple was the predecessor in interest of the defendant and respondent, Emma Rose. Therefore, it appears that on November 21, 1854, the date of the last mentioned conveyance, said Stephen B. Whipple (Emma Rose's predecessor) was the owner of the "State Title" in the land, and said John R. Snyder (plaintiff's and appellant's predecessor) was the owner of the "City Title" therein.

The title continued in this condition until April 10, 1860, on which date the said Stephen B. Whipple commenced, in the fourth district court, a suit in ejectment against Jacob Peterson, John Oschwald, George W. Guthrie, G. Murhard, A. Heeser, and John R. Snyder. The complaint alleged that the plaintiff was the owner *in fee simple,* and entitled to the possession of certain lands, including the land involved in this action. The complaint further alleged that, "while so seized and possessed and entitled to the possession of all that certain block or parcel of land above described, the defendants, on or about the —— day of ——, A. D. 185—, unlawfully, and without title or right, entered upon the same and ousted the plaintiff from the possession thereof, and said defendants are now in possession and claim the exclusive right to the said piece or parcel of land, and now wrongfully and unlawfully retain and withhold possession of said lot and premises and exclude the plaintiff from the possession of the same, or any part thereof."

The complaint further alleged that plaintiff had suffered damages in the sum of one thousand dollars by the wrongful and unlawful ouster, retention and withholding of possession of said land by defendants.

The prayer of the complaint was as follows: "Wherefore, the plaintiff demands judgment against the said defendants, that they may be adjudged to surrender the possession of said real estate to him, the said plaintiff, and pay to him, said plaintiff, the said sum of one thousand dollars, and also the cost of this action; together with such other order or further relief as the court can give."

On April 30, 1860, the defendant, John R. Snyder, filed an answer in said action, in which it is alleged: "That as to the ownership or right of possession of said plaintiff to a portion of the land described in complaint this defendant knows nothing and not knowing he neither admits nor denies but leaves plaintiff to his proofs. For further answer the defendant says that 'he is the part owner and in possession' of certain land" (describing only the land in controversy). The answer further alleges: " . . . But defendant denies that plaintiff was the owner and in the possession or entitled to the possession of the above described premises on the —— day of ——, 185—, or at any other time or that this defendant wrongfully and unlawfully ousted plaintiff or that plaintiff sustained any damage. Further answering defendant admits that he is now and for a long time past has been in the possession of the premises hereinbefore described, but he denies that he is so possessed wrongfully and unlawfully or that he has no title therefor or that plaintiff is damaged thereby." The prayer of said answer was as follows: "Wherefore, defendant prays judgment in his favor for his costs."

On April 30, 1860, an answer was filed by the defendant George W. Guthrie. This answer was similar in form to the answer of Snyder, except that Guthrie alleged that he was the owner of *all* the land described in the complaint. The prayer was similar to that in the answer of the defendant Snyder. The record does not reveal any answer by any of the other defendants.

On August 8, 1861, judgment was entered in said action as follows: "It is hereby ordered, adjudged and decreed, that Stephen B. Whipple, plaintiff, do take nothing by this

proceeding against G. W. Guthrie and J. R. Snyder, defendants, but that said defendants recover their costs.''

The effect of this judgment is the sole question presented on this appeal.

Appellant contends that this judgment is an estoppel against respondent, Emma Rose, who is the successor in interest of Stephen B. Whipple.

It will be remembered that Whipple claimed that he was ''the owner in fee'' of the land in dispute, which would include the ''City Title,'' and his attempt to oust Snyder, who was the real owner of the ''City Title,'' was undoubtedly based upon the following facts: On January 30, 1852, Whipple purchased all the right, title, and interest of the city of San Francisco in the land in controversy, on execution of two judgments against the city, one entered on December 8, 1851, and the other on December 11, 1851. On May 29, 1854, the sheriff issued to Whipple a deed to said land in consummation of the said two execution sales. The only interest which it could be claimed that the city of San Francisco had in the land on December 8 and 11, 1851, was the ''City Title,'' granted by the Act of March 26, 1851, and Whipple undoubtedly believed that said execution sales and sheriff's deed in consummation thereof vested him with the ''City Title'' to the land. Whipple subsequently acquired the ''State Title'' by deed dated November 21, 1854; therefore, when Whipple subsequently, and on April 10, 1860, brought said ejectment suit against Snyder et al., he undoubtedly did so on the belief that he owned the *entire* title to the land in question and, therefore, in his complaint alleged that he was the ''owner in fee simple'' of the land in controversy. The defect, however, in Whipple's claim to the entire title was that at the date of the two judgments in execution, under which the land was sold to him—that is, on December 8 and 11, 1851—the city of San Francisco had *no* interest in said land, because on May 24, 1851, more than six months previously, the city had conveyed all its interest in said land to the ''Commissioners of the Funded Debt,'' appointed under the act of the legislature of May 1, 1851. The effect, however, of the various statutes and conveyances had not been judicially determined in April, 1860, when Whipple brought said ejectment suit against Snyder et al., and was not determined until October, 1861, when

the decision in *Board of Education* v. *Fowler, supra,* was rendered.

In the Fowler case it was held that the deed dated May 24, 1851, had *divested* the city of San Francisco of its interest in said land.

It follows, therefore, that Whipple received no interest in the "City Title" by virtue of his deed under execution, and only owned the "State Title" when the ejectment suit was commenced, and the real owner of the "City Title" was John R. Snyder, and Snyder's ownership of the "City Title" entitled him to the possession of the land until the expiration of the 99-year term, which would be until March 25, 1950.

Under this unusual situation regarding the title the above-quoted judgment in the ejectment suit of *Whipple* v. *Snyder et al.* was rendered, "that Whipple take nothing against Snyder and Guthrie, but that Guthrie and Snyder recover their costs."

This judgment, undoubtedly, concluded Whipple from any further claim to the "City Title," but the all-important question is, Did this judgment also conclude Whipple with respect to the "State Title"? Or, in other words, when Whipple lost his ejectment suit, did he at the same time and by the same judgment also lose his reversionary interest, or "State Title," to the land in question? We think not.

Generally speaking, the action of ejectment is merely a possessory action, and is confined to those cases where the claimant has a possessory title; that is to say, a right of entry upon the land. (*Payne* v. *Treadwell,* 5 Cal. 310, 311; *Montgomery* v. *Railway Co.,* 104 Cal. 186, 197 [43 Am. St. Rep. 89, 25 L. R. A. 654, 37 Pac. 786]; *Garner* v. *Marshall,* 9 Cal. 268–270; 9 R. C. L. 827, 853; 9 Cal. Jur. 973, 974; *Wells* v. *Steckelberg,* 52 Neb. 597 [72 N. W. 865].) "It may, however, and frequently does, become the means of trying title, since either party may base his right to possession entirely upon some claim of title. Where title is alleged by either party as a basis of his right to possession, the judgment becomes *res judicata* to the extent that *an adjudication of it was essential to the judgment, but not otherwise.*" (Freeman on Judgments, 5th ed., vol. 2, secs. 866, 867, pp. 1830–1832; *Wehle* v. *Price,* 202 Cal. 394 [260 Pac. 878], and cases there cited.)

Therefore, Whipple, by alleging in his complaint in ejectment that he was "the owner in fee simple and entitled to possession" of said lands, undoubtedly put in issue both title and right of possession, but Snyder, by his answer, says "he is part owner and in possession of said lands, but denies that plaintiff was the owner and in possession or entitled to possession on the —— day of ——, 185—, and, furthering answering, defendant admits that he is now, and for a long time past has been, in the possession of the premises . . . but denies that he is so possessed wrongfully or unlawfully or that he has no title therefor. Wherefore, defendant prays judgment in his favor for his costs."

This is a very unusual form of answer, and we must assume that it was so framed intentionally, and it cannot be said that it does more than deny Whipple's right to possession and set up Snyder's right to possession. If we are correct in this, then the only issue before the court in said ejectment suit was whether Whipple or Snyder was entitled to the immediate possession of said land, and on this issue Snyder must necessarily have prevailed, because he was at the time *rightfully in possession under the 99-year lease.* Whipple's claim to the "City Title" had failed because, as we have seen, his deed under execution conveyed nothing, and he was out of possession and at the time only the owner of the reversionary interest in the land.

Under such a situation the question of possession was all that it was essential for the court to determine, and it was all that the judgment, upon its face, shows that the court did, in fact, determine. The ownership of the reversionary interest, or, as we have called it, the "State Title," was wholly immaterial in determining *who was presently entitled to the possession of said land,* which was the sole question in said ejectment suit. The right to possession depended entirely upon the ownership of the 99-year leasehold interest, and not upon the ownership of the land after the 99-year leasehold interest had expired.

Section 1911 of the Code of Civil Procedure provides: "That only is deemed to have been adjudicated in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto."

This section, although not enacted until 1872, is, nevertheless, a statement of elementary principles relative to estoppel by judgment, which was in effect in this state at the time of the entry of the judgment in said ejectment suit. When we apply the rules of law embodied in this section to the facts in the case at bar, we find, as already stated, that the judgment in said ejectment case does not, upon its face, purport to adjudicate the reversionary title of Whipple in the property; neither was this reversionary title actually and necessarily included in said ejectment judgment or at all necessary thereto.

It seems clear that if an express adjudication, relative to the reversionary title, had been made in said ejectment suit, the court would have been compelled, under the admitted facts, to have adjudicated the same in favor of Whipple, but had this been done, still, it would not have entitled Whipple to a judgment for the *present possession* of the land, because the *right of present possession was dependent entirely* upon the ownership of the 99-year lease, or "City Title."

Appellant strenuously contends that the decision of the supreme court in *Wehle* v. *Price, supra,* is conclusive in his favor of the case at bar. We are unable to agree with this contention.

*Wehle* v. *Price* was a suit to have a deed executed by Wehle to Price declared to be a mortgage and to quiet the title of Wehle to the land involved in the action. By way of defense Price pleaded the judgment in a former action brought by him against Wehle. The complaint in said former action was an ordinary complaint in ejectment, in which the plaintiff alleged that he was "the owner of and entitled to the land involved." The defendant, after filing a demurrer to this complaint, which was overruled, *defaulted.* Thereupon a trial was had before the court without a jury and judgment was entered in favor of the plaintiff. By the judgment it was adjudged that the "plaintiff *is the owner in fee simple* and entitled to the possession of the premises described in the complaint. . . . That the defendant, together with all persons claiming under him, shall be forever barred of a recovery of said premises *and of claim of title thereto and the title to said premises is absolutely vested in the plaintiff,* and that the plaintiff be not molested

in the possession of said premises by the defendant or by any person claiming under said defendant.''

From the foregoing it appears that the judgment, which was the basis of the estoppel asserted in *Wehl* v. *Price, was a judgment decreeing that the party asserting the estoppel was the owner in fee simple of the land in controversy, and that the other party had no interest of any kind in said land;* in effect, a judgment quieting Price's title to the land against Wehle.

The judgment in the ejectment suit of *Whipple* v. *Snyder et al.,* however, is entirely different. The plaintiff, Whipple, admittedly owned the reversionary title to the land in controversy when he commenced his suit. He also claimed the 99-year leasehold interest by virtue of his deed under execution. The defendant, Snyder, was in possession of the land, claiming to be the owner of the 99-year leasehold interest, which carried with it the right of possession. The court rendered judgment in favor of Snyder, undoubtedly, for the reason that Whipple's deed under execution *did not vest* him with any interest in the 99-year leasehold interest, and the court *did not decree or adjudge* that Whipple was not the owner of the reversionary or ''State Title.'' It *did not decree* that Snyder was the owner of the ''State Title''; the judgment was merely ''that plaintiff take nothing by his action and defendant recover his costs''; that is, Whipple should not recover possession of the property.

From what has been said it follows that we are of the opinion that the judgment in the ejectment suit of *Whipple* v. *Snyder et al.* is not *res judicata* with respect to the ownership of the reversionary interest or ''State Title'' and does not create an estoppel against respondent Emma Rose, who is the successor in interest of Stephen B. Whipple.

. The judgment is, therefore, affirmed.

Nourse, J., and Sturtevant, J., concurred.