[No. F045332. Fifth Dist. May 13, 2005.]

HENRY P. ANDERSON et al., Plaintiffs and Appellants, v. TIME WARNER TELECOM OF CALIFORNIA, INC., Defendant and Respondent.

## COUNSEL

Kuhs, Parker & Hughes, William C. Kuhs and Robert G. Kuhs for Plaintiffs and Appellants.

Goodman & Richter, Linda L. Goodman and Steven S. Richter for Defendant and Respondent.

## OPINION

**LEVY, J.**—This proceeding stems from complaints for trespass and ejectment filed by Henry P. Anderson and by Kent Stephens, Dixie Stephens, and Neal Harding, trustee of the Marko Scott Zaninovich, Andrew Thomas Zaninovich and Morgan Zaninovich living trusts (collectively Stephens), against Time Warner Telecom, Inc. (TWI). Anderson and Stephens (appellants) alleged that TWI was not authorized to install, operate and maintain a fiber optic network within the county road easements and therefore was trespassing on their property. Thereafter, respondent, Time Warner Telecom of California, L.P. (TW California), was added to both complaints as a Doe defendant.

TW California moved for summary judgment on the ground that the fiber optic network was authorized under Public Utilities Code section 7901. That section grants telephone companies the right to use the public highways to install their facilities. The trial court agreed and granted TW California's motion.

As discussed below, the trial court was correct. TW California is a telephone corporation and its fiber optic cables are used for telecommunication. Further, installation and maintenance of the fiber optic cables are within

the scope of the easements. Accordingly, the judgment in favor of TW California will be affirmed.

## BACKGROUND

Appellants own real property that abuts public highways in Kern County. The county statutorily acquired an easement for a public right-of-way over the Stephens property in 1892. The Anderson property is subject to a 1953 deed that granted the county an "easement or right of way" for "the sole purpose of a public highway."

In 1997 and 1999, the county issued encroachment permits to GST Telecom California, Inc. (GST) for the installation of conduits and fiber optic cables beneath the public roadways. These conduits, cables and related facilities were installed within the easements. GST did not obtain permission from appellants before beginning work under the encroachment permits.

In March 1999, the California Public Utilities Commission granted TW California's petition for a certificate of public convenience and necessity "to operate as a facilities-based provider of competitive local exchange telecommunications services" and "as a reseller of competitive local exchange telecommunications services."

In January 2001, TW California acquired GST's assets through its parent, TWI. TWI had made a successful bid in a bankruptcy proceeding and had designated TW California as the subsidiary to take title to these assets.

In June and July 2002, Anderson and Stephens filed separate complaints against TWI for trespass and ejectment. Both appellants alleged that the presence of fiber optic conduits and cables beneath the public right-of-way abutting their respective properties constituted a trespass. The two actions were thereafter consolidated.

In September 2002, appellants served TWI with summonses and complaints. TWI informed appellants that TW California owned the subject facilities.

In February 2003, appellants added TW California as a Doe defendant and TW California answered the complaints.

In October 2003, TW California moved for summary judgment/adjudication based on Public Utilities Code section 7901. The trial court found that TW California was a "telephone corporation" within the meaning of the Public Utilities Code and therefore the installation and maintenance of the fiber optic network was and is lawful under section 7901. Accordingly, the trial court entered judgment in favor of TW California.

## DISCUSSION

1. *TW California has the right to use the subject easements for its fiber optic network under Public Utilities Code section 7901.*

The trial court granted summary judgment in favor of TW California based on Public Utilities Code section 7901. In making this ruling, the court found that the two roads at issue were county roads; the fiber optic facilities were installed on those roads; and TW California was a "telephone corporation" within the meaning of Public Utilities Code section 7901, having been granted a certificate of public convenience and necessity by the Public Utilities Commission.

Appellants contend the trial court erred as a matter of law. Appellants note that one of the easements was established by an express grant in 1953 "for the 'sole purpose of a public highway' " and the other, established by statute in 1892, provided the public with only the right to travel over the road. According to appellants, these easements are limited to travel and the work incidental to highway construction, improvement and maintenance. Therefore, appellants argue, the installation of fiber optic telecommunication facilities for commercial purposes exceeded the scope of subject easements.

■ However, under Public Utilities Code section 7901 telephone companies have the right to use the public highways to install their facilities. That section provides, in part: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway . . . and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway . . . ."

■ A telephone corporation is a company that owns, controls, operates or manages a telephone line for compensation in California. (*Williams Communications v. City of Riverside* (2003) 114 Cal.App.4th 642, 648 [8 Cal.Rptr.3d 96].) A telephone line includes conduits, fixtures, and personal property used to facilitate communication by telephone. (*Ibid.*) Under these definitions, TW California is a telephone corporation and its fiber optic network is a telephone line.

■ Public Utilities Code section 7901, formerly Civil Code section 536, has been judicially construed by many decisions of the California Supreme Court. (*County of L.A. v. Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 384 [196 P.2d 773].) It has been uniformly held that the statute is a continuing offer extended to telegraph and telephone companies to use the highways so

long as telegraph or telephone service is continued. (*Ibid.*) The company accepts this franchise by the construction and maintenance of lines and thereby assumes the duty to furnish proper and adequate communication service to the public. (*Ibid.*) Thus, in return for the privileges granted under this section, the state is assured of a continuing benefit. The state and the company enter into a binding agreement supported by valid consideration. If the company fails to render the service, the franchise terminates. (*Id.* at p. 388.) Moreover, the statute has consistently withstood various constitutional attacks. (*Id.* at pp. 392–393.)

Here, as found by the trial court, Public Utilities Code section 7901 clearly applies. Accordingly, TW California has the right to use the public highways at issue for its facilities.[1]

2. *When the easements are construed according to the law in force at the time they were established, and in the context of the natural evolution of the technology, the fiber optic facilities are within the scope of those easements.*

Appellants maintain that TW California is trespassing on their property. Relying on the terms of the easements, appellants argue that installation and maintenance of the facilities are outside the scope of those easements. Appellants take the position that the easements, when construed according to the law in force at the time they were established, confer only the right to travel plus incidental uses that further this right. According to appellants, the fiber optic facilities constitute an additional servitude or burden upon their land beyond the purposes of the easement.

■ Appellants acknowledge that some flexibility exists in determining an easement holder's rights. The operation of easements must necessarily be prospective. (*Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 355 [62 Cal.Rptr. 193, 431 P.2d 849].) Thus easement dedications are interpreted broadly and are deemed to have been intended to accommodate future needs. (*Ibid.*) "[C]hanged economic and technological conditions require reevaluation of restrictions placed upon the use of real property . . . ." (*Ibid.*) For example, it has been held that the scope of the easement at issue was not exceeded when a municipality granted a private company the right to construct and operate a railroad in a public right-of-way (*Montgomery v. Railway Company* (1894) 104 Cal. 186 [37 P. 786]); pipes were laid under a public street (*Colegrove W. Co. v. City of Hollywood* (1907) 151 Cal. 425 [90

---

[1] Appellants also argue that the trial court erred in granting the summary judgment motion because TW California failed to prove that the fiber optic facilities are used for furnishing services to the public. However, Public Utilities Code section 7901 does not require such proof.

P. 1053]); a traffic tunnel was constructed beneath a public street (*Hayes v. Handley* (1920) 182 Cal. 273 [187 P. 952]); an electric interurban railway was replaced by a motorbus service (*Faus v. City of Los Angeles, supra,* 67 Cal.2d 350); a parking area was constructed in a " 'pleasure park' " where the 1904 dedication prohibited "teaming" (*Abbot Kinney Co. v. City of Los Angeles* (1963) 223 Cal.App.2d 668 [36 Cal.Rptr. 113]); and a natural gas pipeline was buried beneath a county road (*Bello v. ABA Energy Corp.* (2004) 121 Cal.App.4th 301 [16 Cal.Rptr.3d 818]).

However, despite the modern trend to construe public rights-of-way to accommodate technological advancements, appellants insist that permitting fiber optic facilities beneath the county roads at issue exceeds the scope of the easements. Appellants argue that the technological developments must further the particular purpose of the easement, which in this case is highway travel, not telephone communication.

To support their position, appellants rely on *Gurnsey v. Northern Cal. Power Co.* (1911) 160 Cal. 699 [117 P. 906]. There, the public highway at issue was established under former Political Code section 2631, i.e., under the " 'Viewer's Method.' " Thus, the public acquired " 'only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided.' " (160 Cal. at p. 705.) Thereafter, Tehama County granted a power company a franchise to erect power poles and stretch wires for the purpose of conducting and transmitting electric power over and along the county roads and highways of the county. (*Id.* at p. 702.) This franchise was established under the law that authorized a county board of supervisors " 'to grant franchises over and along the public roads and highways for all lawful purposes . . . .' " (*Id.* at p. 706.)

Under these circumstances, the California Supreme Court concluded that the power pole line in the highway over plaintiff's land constituted an additional servitude or burden upon the land beyond the purpose of the easement. (*Gurnsey v. Northern Cal. Power Co., supra,* 160 Cal. at p. 709.) The line was not built to light the highway, i.e., to promote the comfort and convenience of the public in the use of the highway, but rather to sell power to two ranch premises. (*Id.* at p. 708.) Since the easement acquired was the right to travel over the road, the board of supervisors was limited to maintaining the highway so as to provide a proper and convenient right-of-way for the public. The county's power to grant a franchise " 'for all lawful purposes' " did not warrant invading the paramount rights of plaintiff as the owner of the fee. (*Id.* at p. 709.)

However, the *Gurnsey* court also noted that a distinction between country and urban easements could be drawn by reason of a highway's proximity to a large city, i.e., to promote the safety and convenience of the public, it might be necessary to light a heavily traveled road. (*Gurnsey v. Northern Cal. Power Co., supra,* 160 Cal. at p. 706.) In fact, over 15 years earlier the court adopted a broad and comprehensive view of the rights of the public in and to the urban streets and highways. (*Montgomery v. Railway Company, supra,* 104 Cal. at p. 192.) The *Montgomery* court noted that, in general, the country highway is needed only for the purpose of passing and repassing (*id.* at p. 188), whereas, "[i]n the case of streets in a city there are other and further uses, such as the construction of sewers and drains, laying of gas and water pipes, erection of telegraph and telephone wires, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times urban streets have been subjected." (*Id.* at p. 189.)

The *Montgomery* court's expansive interpretation of rights-of-way in developed areas has been consistently reaffirmed. (*Bello v. ABA Energy Corp., supra,* 121 Cal.App.4th at pp. 309–312.) Thus, two lines of California Supreme Court right-of-way jurisprudence have emerged. Under *Gurnsey,* a trespass occurs in a rural setting unless the burden serves purposes incidental to the effective use by the public of the highway. In contrast, the *Montgomery* line broadly interprets the scope of rights-of-way based on the need to accommodate the extensive infrastructure that accompanies modern development.

Since 1894, the intensive use of rights-of-way found in *Montgomery* has migrated with city populations into the countryside. (*Bello v. ABA Energy Corp., supra,* 121 Cal.App.4th at p. 312.) With this expansion of public services and technology into California's rural areas, the rural/urban distinction in the construction of public rights-of-way has been called into question. (*Id.* at pp. 312–313.) Nevertheless, it is unnecessary to consider whether such a distinction applies in this case. As discussed below, when the easements in question were established, their use as a public highway included the right of a telegraph or telephone company to construct and maintain telegraph and telephone lines. Thus, such use is not outside the scope of the easements.

■ An easement must be interpreted according to the statutes and decisional law in force at the time it was established. All applicable laws are presumed to be known by the parties and to form a part of the agreement as if those laws were expressly referred to and incorporated. (*Alpha Beta Food Markets v. Retail Clerks* (1955) 45 Cal.2d 764, 771 [291 P.2d 433].)

The predecessor of Public Utilities Code section 7901, Civil Code section 536, was first enacted in 1872 as part of the original Civil Code. (*Sunset Tel. and Tel. Co. v. Pasadena* (1911) 161 Cal. 265, 273 [118 P. 796].) The language was identical to the current section except that there was no reference to telephone corporations, reading, " 'Telegraph corporations may construct lines of telegraph along and upon,' etc." (*Ibid.*) The reason for this omission was that the telephone was completely unknown in 1872, not having been invented until 1875. (*Id.* at p. 277.)

In 1905, Civil Code section 536 was reenacted to add telephone corporations and telephone lines to the statute. (*Sunset Tel. and Tel. Co. v. Pasadena, supra,* 161 Cal. at p. 272.) In 1951, Civil Code section 536 became Public Utilities Code section 7901. The language of section 7901 remains as it was in 1905. Further, this right of the state to grant franchises for the construction, maintenance and operation of telephone and telegraph lines applies to all public streets and highways, both urban and rural. (*City of Petaluma v. Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43].)

■ Thus, when the 1953 deed granted the county an "easement or right of way" for "the sole purpose of a public highway," one purpose of a public highway was its use for "lines of telegraph or telephone lines" under Public Utilities Code section 7901. This public highway easement thereby incorporated a telephone corporation's right to use the highway to install its facilities. (*Alpha Beta Food Markets v. Retail Clerks, supra,* 45 Cal.2d at p. 771.) Accordingly, TW California's fiber optic facilities are not outside the scope of the easement. That servitude existed by statute when the easement was established.

Similarly, when the county statutorily acquired an easement for a public right-of-way in 1892, Civil Code section 536 granted telegraph corporations the right to construct telegraph lines along such public roads. Thus, as with the 1953 easement, this 1892 easement incorporated a telegraph corporation's right to use the right-of-way to install telegraph lines. Under the broad construction of easements undertaken to accommodate technological advances, telephone lines are also within the scope of this easement. (Cf. *Salvaty v. Falcon Cable Television* (1985) 165 Cal.App.3d 798, 803 [212 Cal.Rptr. 31].) Although telephones did not exist at the time the easement was established, they are part of the natural evolution of the technology. (*Ibid.*)

In sum, Public Utilities Code section 7901 mandates judgment in favor of TW California. TW California's right to use the public highways at issue for its fiber optic facilities is included by incorporation within the terms of the easements.

## DISPOSITION

The judgment entered in favor of Time Warner Telecom of California, L.P. is affirmed. Costs on appeal are awarded to Time Warner Telecom of California, L.P.

Harris, Acting P. J., and Dawson, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 27, 2005.