[Filed December 10, 1889.]

JOSEPH PAQUET, APPELLANT, *v.* MT. TABOR STREET RAILWAY COMPANY, RESPONDENT.

A railway corporation authorized to locate, construct, and operate its road upon a street in an incorporated city, by authority of the common council thereof, granted in accordance with the charter of the city, or upon a county road in the country, under an agreement with the county court of the county in which the road is situated, in accordance with section 3242, Ann. Laws of Oregon, cannot be enjoined from proceeding with its enterprise at the suit of an owner of lands abutting upon the street and county road, whether the fee to the lands to the center of the street and county road adjacent thereto is in such owner or not, without establishing, by allegations and proofs, that the construction and use of the railway will specially interfere with the owner's ingress and egress to and from his premises.

The principles adhered to by a majority of the court in *McQuaid* v. *Railway Co., ante.* 899 (decided at this term), approved, so far as the question herein is involved, and held to be decisive of this case.

APPEAL from the circuit court for Multnomah county.

*C. H. Carey, F. D. Chamberlin,* and *P. L. Willis,* for Appellant.

*C. B. Bellinger,* for Respondent.

THAYER, C. J.—In this case the appellant sought to enjoin the respondent, a railway corporation, organized

under the laws of the State, from building and maintaining a motor line of railway upon a certain street in the city of East Portland, and also upon a certain county road, in the county of Multnomah, which was a continuation of said street beyond the limits of said city. The appellant alleged in his complaint that he was the owner in fee of block 100, in Stephens' addition to said city, and within the corporate limits thereof, which block abuts upon, and the fee of the land connected therewith extends to, the central line of the street along the north side thereof, which street is 60 feet wide, and is known as "Hawthorne Avenue.' That said street, at the eastern bounds of the city, connects with a county road 40 feet in width, which extends east into the country several miles, and is also called "Hawthorne Avenue." And he alleged that, abutting upon the north side of said county road, and extending south to the center thereof, he also owned a tract of land or country property, lying about 80 rods east of said city boundary; all being in the county of Multnomah. And appellant further alleged, in substance, that the respondent, without his consent, and without payment or tender of any compensation for the use of said land, or of said street or road for railroad purposes, or any proceedings had to condemn or appropriate the street or road, or any part thereof, for such purposes, began the construction of a standard gauge railroad, to be operated by steam along said street and road, and over appellant's said property lying within the limits thereof. The respondent justified its acts of build ing and operating its road upon said street, under authority granted by the common council of the city, pursuant to its charter; and of locating, constructing, and operating it upon said county road, under an agreement with the county court for Multnomah county, in accordance with section 3242, Ann. Laws Oregon. The circuit court, after hearing the case, entered the decree appealed from.

The appellant's counsel have cited a long list of authorities to prove that the fee to the land embraced in the street and road to the center thereof, upon which the appellant's

said pieces of ground abutted, was in appellant; but it was not alleged in the complaint, or claimed, as I understand, that the location, construction, and operation of the railroad upon the street and county road affected his said premises in any particular further than the usual annoyances and inconveniences attendant upon the use of that character of appliances. His claim to the injunction seems to have been based upon the grounds that the use of a public highway for such purpose is a new use or additional servitude upon the land occupied by the highway. We have considered that question in connection with the case of *McQuaid* v. *The Portland and Vancouver Railway Co., ante,* (submitted at this term), and reached the conclusion that such a use of a highway by a railway corporation does not necessarily violate the rights of an owner of the fee to the land included in the highway, or put the land to a use foreign to the one contemplated in the establishment of the highway; nor is it so inconsistent with the principal use as to constitute a "taking" of the land, within the meaning of the constitutional provisions upon that subject, unless it cut off rights belonging to parties by virtue of their relations to the land as a public highway. The establishment of a public highway practically divests the owner of the fee to the land upon which it is laid out of the entire present beneficial interest, of a private nature, which he had therein. It leaves him nothing but the possibility of a reïnvestment of his former interest, in case the highway should be discontinued as such. This view, I am aware, is contrary to the ancient doctrine that the owner of the fee owned the land subject only to such public uses, and that he had a right of action when the use was diverted to a different purpose. Such a doctrine may have been applicable where the ownership was merely subject to a right of way over the land; but where, as in modern cases, it is devoted exclusively to the purposes of a public thoroughfare, and the control thereof is committed to legally constituted authorities, charged with the duty of maintaining

it for such purpose, the doctrine becomes but a vague theory, and should be laid away among the antiquities of a past age. The State has power to regulate and control the use of all public highways; and if it deems proper to admit a railway corporation to enjoy such use in common with the public, in subordination to the authorities having the immediate control of them, I cannot perceive that the owner of the fee has any more right to complain than any other member of the community has, or that his rights are affected in any greater degree. As owner of the land abutting upon the highway, he may suffer a particular inconvenience and damage in consequence of the location, construction, and operation of the railway thereon, and be entitled to claim compensation therefor. If the corporation were to build its road so near his premises, or to so change the grade of the highway as to interrupt his access thereto, he might reasonably claim damages therefor; but that would arise out of the fact that he was thereby deprived of a right which inhered in his ownership of the premises,—the right of ingress and egress to and from the same by means of the highway,—and without the benefit of which they might be comparatively valueless to him. The same right, however, belongs to every owner of land which abuts upon the highway, and may be enforced in the same manner, when so interfered with. But where the track is located in the middle of the highway, and the railway properly built and operated under such authority as shown in this case, the adjoining landowner has no legal cause for complaint.

The decree appealed from will therefore be affirmed.

LORD, J., dissenting.