[Civ. No. 24615. Second Dist., Div. One. July 24, 1961.]

MILDRED E. BATES, Appellant, v. ERNEST TERRY et al., Respondents.

PACIFIC HEBREW SEMINARY (a Corporation) et al., Respondents, v. MILDRED E. BATES, Appellant.

Charles W. Hinman for Appellant.

William E. Cornell for Respondents.

FOURT, J.—In an action filed by Mildred E. Bates in Los Angeles County against Ernest Terry, Cecille Terry, Gordon Yarber and Mildred Yarber, she sought by an amended complaint to enjoin the defendants from ''trespassing on plaintiff's property, without consent''; to enjoin the ''defendants from placing rocks and gravel on property of plaintiff, without consent''; to require the defendants ''to keep their dogs off the property of plaintiff, and from molesting plaintiff's burros'' and that she be awarded damages for the trouble caused to her. The defendants in that action sought to file a supplemental answer and cross-complaint against Mildred E. Bates. The court granted the motion to file the supplemental answer (and such was filed) and denied the motion to file a cross-complaint.

Pacific Hebrew Seminary, a corporation, and the defendants in the action hereinabove mentioned, namely, Ernest and Cecille Terry and Gordon and Mildred Yarber, filed an action in the San Fernando branch of the Superior Court for declaratory relief, damages and an injunction against Mildred E. Bates. In this action the plaintiffs sought to have Mildred E. Bates enjoined from maintaining or closing a gate over a right of way known as ''Waring's Road Reservation'' and for plaintiffs Terry certain damages to their business and loss of rentals and for plaintiffs Yarber certain damages for pain and suffering and loss of rentals.

Mildred E. Bates filed a cross-complaint to the San Fernando branch court action wherein she set forth in effect that the plaintiffs therein had no interest in the property in question and were trespassers and prayed for substantial damages. An answer was filed to the cross-complaint.

The cases were consolidated for trial. Hereinafter Pacific Hebrew Seminary, the Terrys and Yarbers will be referred to as plaintiffs or respondents and Mildred E. Bates will be referred to as defendant or appellant.

The basic argument between the parties was whether the plaintiffs had a right to use a 20-foot right of way known

as "Waring's Road Reservation" over the property of the defendant near Cornell, California and whether the defendant had a right to maintain a gate on her property over said "Waring's Road Reservation," sometimes hereinafter referred to as the Reservation Road, together with claims for damages for straying animals, the shutting of the gate by defendant and related items of damages.

The following map or diagram is a part of one of the exhibits in the case.

The map indicates generally the position of the properties with reference to each other. Each of the lots numbered 21, 22 and 23 contained in excess of 16 acres. The general area in which such lots are located is mountainous and the ground is covered with sage brush and hillside growth.

Prior to 1922 Bruce Waring was the owner of a tract of land consisting of several thousand acres. He did, prior to 1922, transfer the entire property to Security Trust and Savings Bank as trustee. A separate trust was thereafter created with Waring, with the bank as trustee, for about 1,000 acres of the property, which was generally located along a 5-mile strip along the southwesterly boundary of the

Waring property and divided into 42 parcels of which the properties here in question were a part. That part of Waring's property marked ④ on the map and consisting of a large acreage was not a part of the subdivision. Waring retained a beneficial interest in such property in the trust. . The chain of title as represented by the record is undisputed by the parties. The first deed by the trust company was dated December 15, 1922, and conveyed Lot 23 (the property of defendant) to Mattie Duval. That deed contained an express reservation by metes and bounds description of the Reservation Road as follows:

"Subject to Right of Way for Roadway purposes for Los Angeles County Cornell Road; also subject to Waring's Twenty Foot Road Reservation the course of said road from its intersection with the said Los Angeles County Road being described as follows:

"A strip of land ten feet wide on either side of a center line having the following course: . . ." Then followed the courses of the line as indicated generally on the map (traversing Lots 21, 22 and 23). The legal description of the Reservation Road was later surveyed by Dr. Walter Boyd and laid out by him. Dr. Boyd was the defendant's immediate grantor in 1954.

The Terry-Yarber parcel (Lot 22) was conveyed by the bank in 1926 to C. R. Blankenship and wife and F. W. Crandall and wife with the same Reservation Road as set forth in the deed to Mattie Duval from the bank. In 1947 Carrie Duffy, the then record owner of Lot 22, conveyed the same by deed to respondents Terrys and Charles A. Johnson and Pearl M. Johnson. In January of 1952 the grantees named conveyed to respondents Terrys the easterly one-half of Lot 22 and they have been since and now are the owners thereof. In July of 1954 the Terrys and Johnsons conveyed to respondents Yarbers the westerly one-half of Lot 22 and they are now the owners thereof. The Reservation Road traverses the entire width of Lot 22 as indicated on the map or diagram.

With reference to Lot 21 the bank continued to own the lot in trust until November of 1925 when it was conveyed to Homer C. Buckner and wife. That deed was subject to all easements of record which included the Reservation Road. Buckners were predecessors in title to Pacific Hebrew Seminary, a corporation, which acquired the property by grant deed in August 1945. The description of the Reservation

Road indicates that it traverses Lot 21. As heretofore set forth the present owners of Lots 21, 22 and 23 all trace their chain of title to the common grantor wherein the Reservation Road description was specifically set forth in detail.

In March 1958 the Security First National Bank (successor to the named trust company and bank), executed a quitclaim deed to all parties in interest, wherein the Reservation Road was described as traversing Lots 21, 22 and 23. That deed further, with reference to the Reservation Road, referred to it as "being an easement for roadway purposes located in the County of Los Angeles, State of California . . ." Then followed the exact description of the reservation as contained in the previously mentioned deeds. The quitclaim deed also set forth that "the intention of the transferor is to make said easement known as Waring's Road Reservation an easement appurtenant to each of said tracts."

The trial judge, pursuant to stipulation, viewed the premises and saw at firsthand the actual situation upon the ground. Full findings of fact and conclusions of law were made and a consolidated judgment was entered. The court determined in effect that defendant is the owner of Lot 23; that the Terrys are the owners of the easterly one-half of Lot 22; that the Yarbers are the owners of the westerly one-half of Lot 22; that Pacific Hebrew Seminary, a corporation, is the owner of Lot 21; that the Reservation Road is an easement for roadway purposes (followed by an exact description of the strip of land which description is in conformity with the description heretofore mentioned) ; that the easement for roadway purposes is appurtenant to the properties of the plaintiffs and defendant and that each of the parcels of plaintiffs and defendant respectively is subject to the easement of the Reservation Road which crosses such parcel, for roadway purposes; that the maintenance of the unlocked gate by defendant is not an unreasonable interference with the right of plaintiffs to use the easement as a roadway; that the plaintiffs and their successors have the right to repair and maintain the Reservation roadway over Lot 23; that defendant has no duty to maintain or repair said portion of the easement and each party is ordered to close and fasten the gate upon passing through and plaintiffs are enjoined from allowing any animals of theirs from straying upon the property of defendant other than upon the Reservation Road and plaintiffs are enjoined from depositing large rocks upon the

easement as it crosses defendant's property and defendant is enjoined from allowing any of her animals to stray upon the property of plaintiffs. Damages are denied to any party.

The appeal is from the parts of the judgment adverse to Mildred E. Bates.

The appellant contends, among other things, that the court erred in holding the Reservation Road to be an easement appurtenant to the properties; that the findings are not supported by the evidence; that the common grantor only intended the easement as appurtenant to the large holdings adjoining the lots in question and only for his future use; that extraneous circumstances should not be considered in interpreting the deeds; that appellant had a right to rely on conditions existing before 1946; that the dominant tenement was the large Waring holdings adjoining the lots in question.

A résumé of some of the pertinent testimony is as follows: Mildred E. Bates stated that she had lived in the area in question since 1947 and that she purchased Lot 23 from Dr. Boyd in 1954 through negotiations on the part of her son-in-law (her attorney in the present matter) and H. J. Ruess, who represented the doctor. She stated that she saw, prior to her purchase of Lot 23, a bulldozer operator grade the Reservation roadway over Lot 23 in the direction of the Terrys. That bulldozing was done under the direction of Dr. Boyd. She further stated that she knew too that the roadway was used by the Terrys and the Yarbers to go back and forth prior to her purchase of Lot 23. The grant deed from Boyd and his wife to Mildred E. Bates was introduced into evidence.

Charles Hinman stated that he was a real estate broker, an attorney at law and the son-in-law of Mildred E. Bates. He had lived in the area since 1944 and in the purchase of Lot 23 he acted as the agent and attorney for Mildred E. Bates. He related that after Dr. Boyd purchased Lot 23 the doctor had graded a roadway; that he, Hinman, understood and knew the Reservation roadway was there; that when he made the purchase of Lot 23 for Mildred E. Bates he knew of the road constructed by Dr. Boyd and that he knew there was an easement across the property before the original complaint was filed by him in behalf of the appellant.

H. J. Ruess stated that he had made a contract with Bruce Waring to sell off certain lots in a subdivision which was laid out along Triunfo Canyon for a distance of about 5 miles and the lots in question were a part thereof. He was thor-

oughly familiar with the area and knew of the trust between Waring and the bank. In his testimony he referred to a map, a part of which represents the diagram heretofore set forth. He pointed out the route of the Reservation Road as depicted on the diagram and stated that he talked about the matter of the roadway with Waring; that Waring had directed him to have a survey made for a roadway over a practical route from the Cornell Road to Waring's property shown as ④ on the diagram and that such a survey was made. Further, he stated that the record of the survey with reference to the lots in question was placed in the deeds; that each purchaser of each lot in question was told of the Reservation Road "that if and when the road—a road was built on the right of way it would be accessible to them, also"; further that Waring's understanding was that "they will have the right to use it as well as I." He stated too that Dr. Boyd had paid for the surveyor to survey the entire line of the right of way, that the doctor had paid for the grading which was in substantial conformity to the survey stakes. Dr. Boyd was told that the people who owned or occupied Lots 21 and 22 and the back country would have a right to use the roadway. He told of how he had sold Lot 23 to Mildred E. Bates through Hinman and that he had told Hinman of the roadway. He stated too that he told the Terrys and the others to use the roadway and that they had the right to build and maintain the road on their respective lots; that the general course of the roadway was suggested to the surveyor in the first instance and it was laid out to the advantage of all concerned, namely to the owners of the lots in question and Waring.

The Yarbers stated that they bought one-half of Lot 22 in 1954; that they used the Reservation Road as a means to get in and out from Cornell Road and that the road was graded through and across their property and Lot 23.

The Terrys testified that they owned one-half of Lot 22 and that Dr. Boyd, the predecessor to Mildred E. Bates, graded the road up to their property and that he (Terry) continued the road where the doctor left off on and across his property.

Dr. Boyd stated that when he first got the property, Lot 23, that Ruess told him of the right of way across the lot and the deed restriction showing the right of way and that he saw the deed at the time. He further stated that he had the roadway surveyed according to the metes and bounds de-

scription contained in his deed and had the road cleared and bulldozed, creating a 20-foot right of way across his property; further that he knew of the reservation and that he wanted to build the road high enough for the use of all of the parties.

It appears therefore that Mildred E. Bates had actual knowledge of the existence of the Reservation Road prior to her acquiring title to Lot 23, that she also had constructive notice of the existence of the Reservation Road from the recorded deeds; furthermore, the road was plainly visible and in use across the land in question at the time of her purchase and she was put on inquiry as to the possible existence of a servitude. It also appears that the representative of the bank, Waring and Ruess, advised all of the purchasers of the existence of the Reservation Road and used a map identical to the map or diagram in evidence to point out the location of the route of such road.

The respondents assert, and we think correctly so, that the easement appurtenant was created by express grant from a common grantor. Therefore, it was unnecessary under the circumstances to consider seriously whether there was an easement by prescription, or of necessity, or by implication.

"An easement is a right which subjects land or a tenement to some service for the use of some other land or tenement belonging to another owner, involving primarily the privilege of doing a certain act on, or to the detriment of, the former." (17 Cal.Jur.2d 89.)

An easement is "a privilege, without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." (17 Cal.Jur.2d 90.)

An appurtenant easement entails a dominant tenement, in favor of which the obligation exists, and a servient tenement, on which the obligation rests. An easement in gross is a mere personal interest in the land of another. (See 17 Cal.Jur.2d, Easements, § 4, p. 91.)

It is apparent from the evidence in this case that the easement in question was not an easement in gross but was an easement appurtenant.

The consolidated judgments are affirmed.

Wood, P. J., and Lillie, J., concurred.