Filed 10/19/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sierra)

----

| | |
|---|---|
| WILLIAM O. JAMISON, | C074880 |
| Plaintiff and Respondent, | (Super. Ct. No. 7393) |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sierra County, John P. Kennelly, Judge. Reversed with directions.

Ronald W. Beals, Chief Counsel, Jeanne Scherer, Deputy Chief Counsel, Joann Georgallis, Assistant Chief Counsel, Harjinder K. Chima, Megan S. Bazurto, and Jesus Corral, Deputy Attorneys, for Defendant and Appellant.

Kenton J. Klassen, Tomassian Pimental & Shapazian, and Dowling Aaron Incorporated for Plaintiff and Respondent.

1

The trial court enjoined the state Department of Transportation (Caltrans) from removing an obstruction plaintiff William O. Jamison placed against a ditch culvert within a state highway right-of-way without an encroachment permit. The trial court erred in granting the injunction, as no evidence supported an exception to the statutory bar prohibiting injunctions that prevent the execution of a public statute by public officers for public purposes. We reverse.

FACTS

Plaintiff owns large parcels of land near Sierraville in Sierra County. This land is commonly referred to as Alpers Ranch. Plaintiff grazes cattle on the land for about seven months each year.

State Route 49 (SR 49) runs across a 68-acre parcel of plaintiff's land in a southwest-northeast direction. SR 49 has been a public right-of-way in the Sierraville area for over 100 years. (Sts. & Hy. Code, § 349.)[1] Caltrans controls and maintains the SR 49 public right-of-way by authority of prescriptive easements. The easements encompass the width of land between existing fences. Plaintiff owns the underlying fee; he purchased Alpers Ranch subject to the highway easements.

Improvements within the SR 49 right-of-way include the highway, ditches that parallel both sides of the highway, and culverts that connect the ditches both underneath the highway and within the ditches. The ditches and culverts direct water away from the highway to prevent water from flooding and damaging it. In this area of SR 49, water in the parallel ditches flows from the southwest to the northeast.

Lemon Creek flows from the southeast to the northwest almost perpendicular to SR 49. It flows underneath SR 49 at mile marker 48.7 through a culvert. As the water

_____

[1] Subsequent undesignated references to sections are to the Streets and Highways Code.

2

exits the culvert, it can continue either northwest out of the right-of-way and onto plaintiff's land or northeast into the ditch parallel to SR 49. Water in this parallel ditch flows northeast beyond the Lemon Creek culvert and into and out of another culvert that parallels SR 49. This ditch and its culvert are within SR 49's right-of-way. Water in this parallel ditch spills onto plaintiff's land about one-quarter mile past the Lemon Creek culvert.

Plaintiff owns rights to all the Lemon Creek water that runs through the highway culvert. He derives his rights from a 1940 judicial decree. He alleges that since he purchased Alpers Ranch in 2001, he annually uses boards or "blocks" to stop the flow of water into the parallel ditch culvert. This raises the water level of Lemon Creek as it exits the SR 49 culvert high enough to flood and irrigate his 68-acre parcel. He alleges this parcel sits at the highest elevation of Alpers Ranch. He contends that unless he blocks the flow of water at the ditch culvert, his parcel cannot be gravity irrigated by water from Lemon Creek due to its elevation.

In March 2013, plaintiff went into the SR 49 right-of-way and set his blocks at the mouth of the ditch culvert to block the flow of water into that culvert, raise the water level of Lemon Creek, and gravity irrigate his property. Caltrans removed the obstructions on two separate occasions.

Plaintiff sued. He sought injunctive and declaratory relief prohibiting Caltrans from interfering with his right to receive water from Lemon Creek and with his actions to block the ditch culvert to raise the water level.

The trial court issued a preliminary injunction in plaintiff's favor. It ruled plaintiff was likely to succeed on the merits of his action, and the interim harm he would suffer if the injunction were denied outweighed the harm Caltrans would likely suffer if the injunction were issued. The court determined plaintiff was likely to succeed on the merits because he was entitled to Lemon Creek water under the 1940 judicial decree, and the decree did not specify where he could divert that water. Plaintiff was more likely to

3

suffer harm because his cattle business would be harmed if his land were not gravity irrigated as he had done. The court found it was unlikely that plaintiff's actions would cause flooding on SR 49, and Caltrans had not provided evidence of any accidents that had occurred on SR 49 due to plaintiff's actions. The court also determined it was maintaining the status quo by issuing the injunction.

The preliminary injunction prohibits Caltrans from interfering with plaintiff's setting of blocks against the parallel ditch culvert from March 15 until October 15 of each year. The injunction requires plaintiff to remove the blocks if flooding occurs or has the potential of occurring.

Caltrans contends the trial court erred in granting the preliminary injunction.[2]

## DISCUSSION

### I

### *Standard of Review*

" 'The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action. [Citation.] " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him [or her].' " [Citation.]'
(*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280.)

" 'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the

---

[2]    We earlier denied Caltrans's request for a stay of the trial court's order.

4

injunction.  [Citations.]'  (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442, fn. omitted.)  'The trial court's determination must be guided by a "mix" of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction.  [Citation.]'  (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.)  However, '[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.'  (*Ibid.*)

"Ordinarily, appellate review is limited to whether the trial court abused its discretion in evaluating the foregoing factors.  (*Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736.)  'Occasionally, however, the likelihood of prevailing on the merits depends upon a question of pure law rather than upon [the] evidence to be introduced at a subsequent full trial.  This issue can arise, for example, when it is contended that an ordinance or statute is unconstitutional on its face and that no factual controversy remains to be tried.  If such a question of pure law is presented, it can sometimes be determinative over the other factor, for example, when the defendant shows that the plaintiff's interpretation is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits.  [Citations.]'  (*Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595-596; see, e.g., *King v. Meese* (1987) 43 Cal.3d 1217, 1235.)  Of course, such questions of law are subject to de novo review.  (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1145-1146.)"  (*Law School Admission Council, Inc. v. State* (2014) 222 Cal.App.4th 1265, 1280-1281.)

II

*Likelihood of Success on the Merits*

Caltrans contends the trial court erred in granting the preliminary injunction because plaintiff is not likely to succeed on the merits.  We agree.  As a matter of law, plaintiff cannot show he was entitled to an injunction against Caltrans's performance of its statutory duty to control any encroachment upon a state highway right-of-way.

By statute, Caltrans holds full "possession and control of all state highways and all property and rights in property acquired for state highway purposes." (§ 90.) Caltrans has the authority, and is required, to maintain state highways. (§ 91; Gov. Code, §§ 14030, 14520.3.) Caltrans has the authority to determine how to maintain highways. (§ 141.) Indeed, Caltrans has the authority to "do any act necessary, convenient or proper" for the improvement, maintenance, and use of state highways. (§ 92.) For purposes of Caltrans's statutory authority to control the use of, or encroachment upon, state highways, the term " 'highway' " "includes all, or any part, of the entire width of the right-of-way of a state highway, whether or not the entire area is actually used for highway purposes." (§ 660, subd. (a).) In addition, the term " 'highway' " "includes bridges, culverts, curbs, drains, and all works incidental to highway construction, improvement, and maintenance." (§ 23.)

Caltrans has the authority "to keep the highways free from encroachments, and to determine what constitutes an encroachment." (*People v. Henderson* (1948) 85 Cal.App.2d 653, 657 (*Henderson*) [regarding Caltrans's predecessor, the former Department of Public Works].) The term " '[e]ncroachment' " "includes any tower, pole, pole line, pipe, pipe line, fence, billboard, stand or building, or any structure, *object of any kind or character not particularly mentioned in this section . . . .*" (§ 660, subd. (b), italics added.)

Caltrans may issue permits authorizing persons to place, change, or renew an encroachment upon a state highway. (§ 670, subd. (a)(2).) Any person who places an encroachment on a state highway without an encroachment permit issued by Caltrans is guilty of a misdemeanor. (§ 670, subd. (b).) That person's action also constitutes a trespass. (See *People v. Sweetser* (1977) 72 Cal.App.3d 278, 286.) In addition, Caltrans may immediately remove an encroachment on any state highway that "[o]bstructs or prevents the use of the highway by the public." (§ 721, subd. (b).)

6

Plaintiff's blocks within the SR 49 right-of-way to stop the flow of water into the parallel culvert constituted an encroachment. The blocks were an "object of any kind or character" (§ 660, subd. (b)), and Caltrans had the statutory authority to determine whether they were an encroachment and to permit or deny their placement in the right-of-way. Plaintiff never applied for an encroachment permit before he placed the blocks against the parallel culvert. Hence, Caltrans had the authority to remove them immediately for obstructing public use of the right-of-way.

The preliminary injunction prevented Caltrans from executing its statutory duties to keep the right-of-way free from encroachments and to control what encroachments may be placed there. In general, a trial court may not grant an injunction "[t]o prevent the execution of a public statute by officers of the law for the public benefit." (Code Civ. Proc., § 526, subd. (b)(4); see also Civ. Code, § 3423, subd. (d).) However, this rule against enjoining the execution of a public statute is subject to four judicially recognized exceptions: "(1) where the statute is unconstitutional and there is a showing of irreparable injury; (2) where the statute is valid but is enforced in an unconstitutional manner; (3) where the statute is valid but as construed, does not apply to the plaintiff; and (4) where the public official's action exceeds his or her authority. [Citation.]" (*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 501.)

Plaintiff relies on the third and fourth exceptions to the general prohibition to support the preliminary injunction against Caltrans. He contends the statutes on which Caltrans relies to support its actions do not apply to him, and Caltrans's actions exceed its authority. He alleges these exceptions apply because (1) his actions do not constitute an encroachment requiring a permit from Caltrans; (2) his actions do not prevent Caltrans from performing its statutory duty to maintain the right-of-way; and (3) he owns the underlying fee and water rights to Lemon Creek and thus may use the land within the right-of-way to best secure delivery of his water without interference by Caltrans. We disagree with plaintiff's contentions.

7

First, there can be no dispute that plaintiff's blocks were an encroachment. Plaintiff contends they were not the type of encroachment Caltrans can regulate. He argues section 660, subdivision (b), the statute that defines encroachments, refers to types of encroachments that are a substantial and permanent addition to or installation in the right-of-way, which his blocks are not. This argument ignores the clear language of section 660. The statute lists types of encroachments that meet plaintiff's definition, but then it extends its reach to objects that are not of the type listed. It includes as encroachments "any structure, object of any kind or character not particularly mentioned in this section . . . ." (§ 660, subd. (b).) By its terms, the statute expressly includes as encroachments items that are not permanent. Any "object of any kind or character" includes plaintiff's blocks. Moreover, placing his blocks against the parallel culvert for seven months of every year is a substantial obstruction, i.e., encroachment, to the right-of-way.

Plaintiff further argues the list of actions in section 670 that trigger the requirement to obtain an encroachment permit does not list anything similar to his action of placing the blocks in front of the parallel culvert. This is just another argument that his blocks are not an encroachment. Section 670 requires a person to obtain an encroachment permit from Caltrans whenever he seeks to place an encroachment on a state highway. Plaintiff sought to place an encroachment on a state highway, as the statutes define the terms "encroachment" and "highway," and thus was required to obtain an encroachment permit from Caltrans before doing so.

Second, plaintiff's actions prevent Caltrans from performing its statutory duty. Plaintiff contends Caltrans introduced no evidence showing his blocks prevented Caltrans from maintaining and protecting SR 49, or that they would cause flooding on the road, injury or damage. Plaintiff also intimates Caltrans would exceed its authority under section 92 to "do any act necessary, convenient or proper" for the improvement,

8

maintenance, and use of state highways by assuming it can do its maintenance work whenever it wants, particularly if that work affects his water rights.

Plaintiff misses the point. One of Caltrans's duties is to determine whether any type of encroachment may be allowed within the state's right-of-way. Plaintiff has not shown that statutory obligation does not apply to him or that Caltrans's fulfillment of that obligation exceeded its authority. His blocks were an encroachment, and he was required to seek an encroachment permit from Caltrans before he placed them at the culvert. Plaintiff cannot show Caltrans exceeded its authority because he never asked Caltrans to exercise its permit authority.

Third, plaintiff's ownership of the underlying fee and water rights in Lemon Creek give him no greater authority to use the right-of-way than that extended to the public. " 'The late 19th century saw a dramatic change in the judicially recognized scope of public rights-of-way in California. Before the widespread adoption of railroads, electricity, and the telephone, the term "right-of-way" was given its literal meaning—a public right to construct, maintain, and use a road over private land. Any other use required the landowner's consent. [Citations.] Shortly before the turn of the century, however, the Supreme Court recognized that urbanization was placing a much greater demand on public resources than could be accommodated by this literal view of public rights.' (*Bello* [*v. ABA Energy Corp.* (2004)] 121 Cal.App.4th [301,] 308.) During this period of change, our Supreme Court approved of the principle that ' "[t]he establishment of a public highway practically divests the owner of a fee to the land upon which it is laid out . . . ." ' (*Montgomery v. Santa Ana Westminster Railway Co.* (1894) 104 Cal. 186, 193, quoting *Paquet v. Mt. Tabor Street Railway Co.* (1889) 18 Or. 233 [22 P. 906, 907].)" (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1504-1505.)

While this principle has traditionally been limited to urban or developing areas, it is nonetheless true that, as a result of the principle, "[w]here the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of

9

the right of way by the public, the owner of the fee is deemed to possess no greater rights than those who are strangers to the title." (*Henderson, supra,* 85 Cal.App.2d at p. 656.) "Any structure or obstruction that would be unlawful if maintained by a stranger to the title would also be unlawful if maintained by the owner of the fee." (*Id.* at p. 657.) Hence, the mere fact plaintiff owned the underlying fee gave him no right to obstruct the parallel culvert inside the highway right-of-way without an encroachment permit.

Plaintiff's water rights also did not give him authority to place an encroachment in the highway right-of-way without a permit. The 1940 decree grants plaintiff a right to all Lemon Creek water that reaches his property, but it does not specify where along the creek plaintiff may divert the water, that he is to receive the water at a certain water level, or whether Caltrans and the state have any obligation to assist his ability to receive the water at a certain water level. The decree does not state plaintiff may block Caltrans's culvert to obtain his water.

Moreover, there is no evidence Caltrans has interfered with plaintiff's access to Lemon Creek water for his 68-acre parcel. Lemon Creek flows freely underneath SR 49, out of the right-of-way, and onto his parcel. Plaintiff seeks merely to receive the water at a higher water level, but he has introduced no authority holding he is entitled to do so by blocking the parallel culvert without an encroachment permit. He testified he could install a pump on his property to raise the water level if he "wanted to spend a lot of money to buy a pump." He also testified he could bring water from another creek, Perry Creek, over to irrigate the 68-acre parcel, but he chose not to do that. If, however, he wants to raise the water level by blocking the culvert, he must first seek an encroachment permit from Caltrans authorizing him to do so.

Because plaintiff cannot show the encroachment permit statutes do not apply to him or that by applying them to him Caltrans exceeds its authority, the trial court was without statutory authority to issue a preliminary injunction prohibiting Caltrans from executing its statutory duty to control and approve plaintiff's use of the SR 49 right-of-

10

way.  The same is true as to plaintiff's prayer for permanent injunctive relief.  Because we conclude plaintiff cannot succeed on the merits of his action, we need not address the balance of harm granting or not granting the injunction would impose on the parties, and we reverse the trial court's order.

## DISPOSITION

The order granting a preliminary injunction is reversed, the preliminary injunction is vacated, and the matter is remanded for further proceedings consistent with this opinion.  Costs on appeal are awarded to Caltrans.  (Ca. Rules of Court, rule 8.278(a).)


       NICHOLSON     , Acting P. J.


We concur:


     MAURO      , J.


     DUARTE     , J.


11